The Full Commission has reviewed this matter based upon the record of the proceedings before Deputy Commissioner Wanda Blanche Taylor and the briefs and arguments on appeal. Based upon its assignments of error, defendant has failed to show good ground to receive further evidence or to amend the prior Opinion and Award. However, based upon his assignments of error, plaintiff has shown good ground to reconsider the evidence. Having reconsidered the evidence to record, the Full Commission modifies the prior Opinion and Award regarding temporary total disability and a credit for defendant and enters the following opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement dated 14 October 1997 and at the hearing on 21 October 1997 as:
 STIPULATIONS
1. Plaintiff was out of work because of an alleged occupational disease from 4 August 1996 through 16 October 1996.
2. Plaintiff is entitled to the maximum compensation rate for 1996, $492.00.
3. Should plaintiff's claim be accepted he will be entitled to $5,060.57 for temporary total disability payments, representing the 10 2/7 weeks he was out of work.
4. Plaintiff received sickness and accident benefits in the amount of $2,340.00 during the 10 2/7 weeks time period he was out of work with defendant-employer.
5. Pursuant to G.S. § 97-42, defendant-employer would be entitled to a credit or deduction for the sickness and accident payments made to plaintiff.
6. Plaintiff's medical records are stipulated into evidence.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a 41 year old male, born 6 December 1955. Plaintiff has prior experience working in textiles and became employed with defendant-employer in 1981 as a tire builder. Plaintiff did not have any preexisting conditions of his left thumb, forefinger or wrist at the time he became employed with defendant-employer.
2. Plaintiff's job as a tire builder required that plaintiff operate a machine which builds tires, use his hands to grasp, hold and place rubberized stock on a mold, grasp wire and put it on a drum, use a utility knife to cut, place tabs on a roll with his hands, press seals down with his thumbs and use scissors to cut items. Plaintiff regularly applied pressure with his thumbs to push in the two inch rubber thread and seal ends. Plaintiff repeated this operation between 110 and 125 times per eight hour shift. A tire builder is required to pull the product onto the machine and hold it on the machine as the machine builds the tire. Plaintiff, as a tire builder, was required to use the hot knives or scissors between 8 and 10 times per tire. Plaintiff's job with defendant-employer was a production position.
3. In February 1996, plaintiff began having pain in the thumb area of his left hand. Plaintiff would awaken in the night with severe hand pain and would go to the nurse at work and request ibuprofen.
4. Plaintiff's pain continued to worsen and on 4 August 1996, plaintiff reported his hand problem to his supervisor and went to the emergency room at Piedmont Medical Center complaining of acute left thumb pain for approximately four months. At that time, plaintiff was diagnosed with probable trigger finger, given a thumb splint and referred to orthopedics.
5. Thereafter, on 16 August 1996, plaintiff was seen by Dr. McQueen, a Rock Hill orthopedic surgeon, presenting with trigger thumb. Plaintiff was referred to Dr. McQueen by his family practitioner Dr. Gunter, and when he presented to Dr. McQueen, was unable to flex his thumb. Dr. McQueen wrote plaintiff out of work at that time.
6. On 4 September 1996, plaintiff underwent a left trigger thumb release. On 17 September 1996, plaintiff followed up with Dr. McQueen and appeared to be healing normally. On 2 October 1996, Dr. McQueen noted that plaintiff was healing normally and could probably return to work without restrictions. Plaintiff was last seen by Dr. McQueen on 14 October 1996, when plaintiff returned complaining of significant thumb pain and difficulty working. At that time plaintiff was given a second cortisone injection and written out of work to return to work on 16 October 1996 with no restrictions.
7. Plaintiff returned to work on 17 October 1996.
8. During the time that plaintiff was out of work for his trigger finger, plaintiff received sickness and accident benefits in an amount totaling $2,340.00.
9. In January 1997, plaintiff's employment with defendant-employer was terminated for reasons which were not related to his workers' compensation claim or the condition of his left thumb or hand.
10. On 4 March 1997, plaintiff consulted Dr. William L. Lehman, a Rock Hill orthopedic surgeon, for a second opinion. Plaintiff presented with tenderness and difficulty in moving his left thumb and was diagnosed with constrictive flexor tenosynovitis of the left thumb.
11. Plaintiff again consulted with Dr. Lehman on 15 July 1997, and reported continuing problems with gripping. Plaintiff last saw Dr. Lehman on 7 October 1997, continuing to experience pain in his thumb, difficulty in moving his thumb and some tingling and numbness. Electrical studies were performed on the plaintiff's hand on 15 October 1997 and no nerve damage was found.
12. Plaintiff's trigger finger and constrictive flexor tenosynovitis-inflammatory condition of the left thumb were caused by plaintiff's employment with defendant-employer. Plaintiff's regular repetitive use of his left hand and thumb caused plaintiff's trigger finger and constrictive flexor tenosynovitis-inflammatory condition of the left thumb.
13. There is no evidence of record that plaintiff was at an increased risk for contracting left trigger thumb because of his job duties with defendant-employer as compared to members of the general public.
14. There is no evidence of record that plaintiff's trigger thumb condition and his conditions of inflammatory condition of the left thumb-constrictive flexor tenosynovitis are the same condition, related conditions or that either condition is the result of the other condition.
15. As a direct and proximate result of plaintiff's inflammatory condition of the left thumb-constrictive flexor tenosynovitis, plaintiff retains a 40% permanent partial impairment of the left thumb.
16. As the result of his constrictive flexor tenosynovitis-inflammatory condition, plaintiff was unable to earn wages in his position with defendant or in any other employment for 10 2/7ths weeks, as stipulated to by the parties.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's trigger thumb was caused by plaintiff's employment with defendant-employer; however, plaintiff has failed to prove by his employment with defendant-employer exposed him to a greater risk of contracting trigger thumb than members of the general public. G.S. § 97-53(13). Therefore, plaintiff's period of inability to work due to his trigger thumb is not compensable due to plaintiff's failure to prove plaintiff was at a higher risk of trigger thumb than members of the general public. Id.
2. Plaintiff's acquisition of his inflammatory condition of his left thumb-constrictive flexor tenosynovitis was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer, is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. G.S. § 97-53(21). Tenosynovitis attributable to repeated strain or stress on the extensor tendons incident to the performance of the duties of employment caused by trauma in employment is a compensable occupational disease since trauma in its technical sense is not limited to injuries resulting from external force or violence.Id.
3. As the result of his constrictive flexor tenosynovitis, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $492.00 per week for a period of 10 2/7ths weeks, for a total of $5,060.57. G.S. §97-29.
4. As a result of his constrictive flexor tenosynovitis, plaintiff retains a 40% permanent partial impairment of the left thumb, and is entitled to compensation for such disability at a rate of $492.00 per week for 30 weeks. G.S. § 97-31(1).
5. Defendant is entitled to a credit against the compensation awarded above in the amount of $2,340.00 for payments made to plaintiff under a sickness and accident plan. G.S. § 97-42.
6. Plaintiff is entitled to have defendant provide all medical treatment arising from his inflammatory condition of the left thumb-constrictive flexor tenosynovitis. G.S. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation at the rate of $492.00 per week for a period of 10 2/7ths weeks. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee and credit approved herein.
2. Defendant shall pay to plaintiff permanent partial disability compensation at the rate of $492.00 per week for 30 weeks. Having accrued, this compensation and shall be paid to plaintiff in a lump sum, subject to the attorney's fee and credit approved herein.
3. Defendant is entitled to a credit against the compensation awarded above in the amount of $2,340.00 for payments made to plaintiff under a sickness and accident plan.
4. For so long as the same is reasonably designed to effect a cure, give relief or lessen disability, defendant-employer shall pay all medical expenses incurred by plaintiff as a result of his inflammatory condition of the left thumb-constrictive flexor tenosynovitis.
5. An attorney's fee of 25% of the compensation awarded above is approved for plaintiff's counsel and shall be paid by deducting from that sum and paid directly to plaintiff's counsel.
6. Defendant shall pay the costs.
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ LAURA K. MAVRETIC COMMISSIONER
S/_____________ BERNADINE S. BALLANCE COMMISSIONER